UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOLOGICAL DYNAMICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EXOKERYX, INC., <br><br> Defendant. | Case No.: 23cv1664 DMS (JLB) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

This case comes before the Court on Defendant's motion to dismiss. Plaintiff filed an opposition to the motion, and Defendant filed a reply. For the reasons set out below, the motion is denied.

**I.**

**BACKGROUND**

Plaintiff Biological Dynamics is a "leader in exosome isolation technology." (Compl. ¶ 2.) According to the Complaint,

> [e]xosomes and other extracellular vesicles are nonparticles secreted by all cell types into the blood or other biofluids. These nanoparticles carry biomarkers of the cell from which they originated. Isolating exosomes and extracellular vesicles allows researchers and professionals to then test for such biomarkers to determine disease characteristics and propensities. As exosomes exist at an early stage of any disease, technology that can isolate and test exosomes allows for the 'holy grail' – enabling early detection of

>diseases (such as cancer) long before symptoms appear and at a time when treatment can be most effective.

(*Id.*) "A critical part of Biological Dynamics' overall technology is its isolation platform—sometimes referred to as a 'lab-on-a-chip' platform." (*Id.* ¶ 3.) This platform "utilizes a proprietary semiconductor chip that works in connection with Biological Dynamics' proprietary instruments, hardware, and software to isolate exosomes with minimum pre-processing, thereby preserving biomolecules that would otherwise be lost in alternative approaches." (*Id.*) Biological Dynamics developed this platform "over more than a decade and at immense expense[,]" and it "protects its investment and intellectual property through both trade secrets and a large patent portfolio." (*Id.* ¶ 4.)

Those trade secrets are the subject of this case. (*Id.*) Specifically, Plaintiff alleges that two of its former VP-level employees, Richard Young and Bryan Rice, misappropriated Plaintiff's trade secrets after they were terminated from their employment with Plaintiff. Armed with those trade secrets, Young and Rice formed Defendant Exokeryx, which has "virtually replicated Biological Dynamics' business by cloning Biological Dynamics' proprietary 'lab-on-a-chip' platform and core technology." (*Id.* ¶ 6.)

Plaintiff alleges Defendant operated in "stealth" mode from its formation in November 2021 until November 2022, and when it "exited 'stealth' mode" it "provided data on experiments that it had run, indicated that it had already filed patent applications, and announced that it would launch its first product 'ExoPrep,' in 2023." (*Id.* ¶ 7.) Plaintiff alleges Defendant

>simply could not have developed such complicated technology, nor advanced its business, that quickly without the use of Biological Dynamics' trade secrets, including Biological Dynamics' proprietary processes and technologies. Others in this field indicate that the average time to market is over 15 years—a time horizon confirmed by the fact that it took Biological Dynamics and its preeminent engineers and executives over a decade to advance its development to its current commercial status.

(*Id.*)

To confirm its suspicions about Exokeryx, Plaintiff ran a forensic analysis of the laptop that had been previously issued to and used by Rice during his employment with Plaintiff. (*Id.* ¶ 8.) That analysis revealed that after Rice was terminated, "he connected a USB 'thumb' drive to" the laptop, and "[b]etween 9 p.m. until after midnight, Rice proceeded to copy critical Biological Dynamics' documents onto it. Then, on the day Rice agreed to appear at Biological Dynamics' offices to surrender his Company laptop, Rice spent the morning permanently deleting thousands of files from it." (*Id.*)

After finding this information, Plaintiff sent a letter to Young and Rice reminding them of their contractual obligations to maintain the confidentiality of Plaintiff's trade secrets and other proprietary information and to return any company-issued property. (*Id.* ¶ 45.) When Plaintiff did not receive a satisfactory response to its letter, it filed an arbitration demand against Young and Rice to enforce their contractual obligations under their employment-related agreements. (*Id.*) During the arbitration proceedings, Young and Rice challenged certain provisions of their employment-related contracts as unenforceable restraints under California Business and Professions Code Section 16600. (*Id.* ¶ 45 n.1.) The arbitrator ruled in favor of Young and Rice, and invalidated the challenged provisions on nondisclosure and nonuse. (*Id.*)

On August 25, 2023, Rice and Young filed a petition to confirm the arbitrator's decision in San Diego Superior Court.[1] Approximately two weeks after Rice and Young filed that petition, Plaintiff filed the present case against Exokeryx alleging claims for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("CUTSA"). In response to the Complaint, Defendant filed the present motion.

///

---

[1] The state court recently issued an order confirming the arbitrator's decision. (*See* Supp. Req. for Judicial Notice in Supp. of Mot., Exs. K, L.)

## II.
## DISCUSSION

Defendant moves to dismiss this case on two grounds. First, it argues the arbitration decision and the state court order confirming that decision render this case res judicata. Second, Defendant asserts Plaintiff has failed to allege sufficient facts to support the element of misappropriation.

**A.    Res Judicata**

An affirmative defense, such as res judicata, may be raised in a motion to dismiss under Rule 12(b)(6) only when "the defense raises no disputed issues of fact," *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984), and the affirmative defense "clearly appears on the face of" the complaint. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). On the first requirement, Defendant's res judicata argument relies on the Complaint in this case, Plaintiff's complaints in arbitration, and the arbitrator's final decision, all of which are the proper subject of judicial notice.[2] Defendant's reliance on these documents does not raise any disputed issues of fact, therefore the first requirement is met. The second requirement is also met because the arbitration proceeding clearly appears on the face of the Complaint. (Compl. ¶ 45.)

---

[2] A court may consider "matters of judicial notice" in ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Defendant asked the Court to take judicial notice of the arbitration documents mentioned above and eight additional documents, including Rice and Young's petition to confirm the arbitration award, Plaintiff's petition to vacate the arbitration award, discovery requests from the arbitration proceedings, and Plaintiff's Employee Handbook. (*See* Request for Judicial Notice in Supp. of Mot. ("RJN"), ECF No. 9-1.) Plaintiff filed a response to Defendant's Request for Judicial Notice in which it argued that although the Court could take judicial notice of the fact of these documents, it could not take judicial notice of the documents' contents. In its reply brief, Defendant clarified that, other than the allegations in the arbitration complaints, it is not requesting that the Court take judicial notice of the contents of any of these documents. With that clarification, the Court grants Defendant's request to take judicial notice of the allegations in the arbitration complaints and the arbitrator's final decision. The request to take judicial notice of the other documents is denied.

Those initial requirements being satisfied, the Court now turns to consider whether federal or state law applies to the parties' res judicata dispute. Defendant urges the Court to apply federal law while Plaintiff contends that California law applies. Ninth Circuit case law supports Plaintiff's position. *See Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989) (applying Hawaii law to question of preclusive effect of arbitration award reviewed by Hawaii state court). Thus, the Court will apply California law.

Under California law:

> [r]es judicata applies if (1) the decision in the prior proceeding [was] final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding.

*Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110 (9th Cir. 2018) (quoting *Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles*, 126 Cal. App. 4th 1180, 1202 (2004)). As the party asserting this defense, Defendant bears the burden to show each of these requirements is met. *Patel v. Crown Diamonds, Inc.*, 247 Cal. App. 4th 29, 40 (2016) (quoting *Vella v. Hudgins*, 20 Cal. 3d 251, 257 (1977)).

### 1. Final Decision on the Merits

To meet its burden on the first requirement, Defendant relies on the arbitrator's decision. In its opposition to the motion, Plaintiff argued that decision was not final because the petitions to confirm and vacate the decision were still pending in state court. Since that time, the state court has issued its decision confirming the arbitrator's decision, (*see* Supp. RJN, Exs. K, L), which defeats Plaintiff's argument. Plaintiff also argued the arbitrator's decision would not be final until all appeals from the state court decision were resolved. At this time, however, there is no evidence before the Court that Plaintiff has filed an appeal. Unless or until such an appeal is filed, the arbitrator's decision is final.

The next issue is whether the arbitrator's decision was "on the merits." "A judgment is on the merits for purposes of res judicata 'if the substance of the claim is tried and determined.'" *Ass'n of Irritated Residents v. Dept. of Conservation*, 11 Cal. App. 5th 1202, 1220 (2017) (quoting *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77 (2000)) (quotation

marks omitted). Here, the arbitrator found "the pertinent clauses [of the contracts in question] are illegal, and in violation of the public policy as stated in Business and Professions Code section 16600." (RJN, Ex. C at 128.[3]) Defendant argues that finding is a decision on the merits. Plaintiff does not necessarily disagree with that argument. Instead, it argues the arbitrator's decision did not reach the merits *of the claims asserted in this case*. But that is not the question here. The question here is whether the arbitrator rendered a decision on the merits *of the claims in arbitration*. On that question, the Court agrees with Defendant that the arbitrator's decision was "on the merits." Accordingly, Defendant has met its burden on the first element of res judicata.

### 2. Same Cause of Action

In an effort to meet its burden on the second element, Defendant relies on what it calls the "same transactional nucleus of facts" test. Rather than being a freestanding test, whether two actions arise out of the "same transactional nucleus of facts" is but one factor federal courts consider in determining whether there is an "identity of claims" for the purpose of res judicata. *Turtle Island Restoration Network v. United States Dept. of State*, 673 F.3d 914, 917-18 (9th Cir. 2012) (setting out four factors for determining whether there is an "identity of claims" for res judicata).

Regardless, this test does not apply here. Instead, "California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes[.]" *Maldonado v. Harris*, 370 F.3d 945, 952 (9th Cir. 2004).

> The primary right theory is a theory of code pleading that has long been followed in California. It provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

---

[3] The page number cited here and all further citations to the RJN correspond to the page number assigned by counsel pursuant to Civil Local Rule 5.1.e.

*Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994) (citations omitted).  Under the primary rights theory, a cause of action "is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010).  As stated in *Boeken*, "under the primary rights theory, the determinative factor is the harm suffered.  When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." *Id.* at 798 (citing *Agarwal v. Johnson*, 25 Cal. 3d 932, 954 (1979)).

Although Defendant did not address the primary rights theory in its opening brief, in its reply brief Defendant argues the harm alleged in the arbitration proceeding is the same harm alleged in the present case, namely Defendant's unfair competition with Plaintiff.  (Reply at 6.)  However, that is an oversimplification of the pleadings and the harm alleged in the arbitration proceeding.  There, Plaintiff alleged harms in the form of loss of control over its proprietary information, loss of its employees, and loss of severance payments made to Rice and Young.  (RJN, Ex. A at 16, 19.)  In the present case, Plaintiff alleges loss of control over its trade secrets and unfair competition on the part of Defendant.  Although the arbitration claims may reference Defendant's unfair competition with Plaintiff, it bears mention that neither Rice nor Young, on their own, could have engaged in unfair competition with Plaintiff.  That specific form of harm, e.g., harm to Plaintiff's "competitive position in the market," and "missed fundraising opportunities and lost sales[,]" (Compl. ¶ 71), could only have occurred through the actions of Defendant, which was under no contractual obligation to Plaintiff and therefore did not participate in the arbitration.  That Plaintiff referenced Defendant's unfair competition in the claims for arbitration does not mean that harm was in issue.  Accordingly, the Court finds the second requirement for res judicata is not met.[4]

///

---

[4] Although this finding resolves the issue of whether res judicata applies, the Court proceeds to address the privity requirement below.

### 3. Privity

To satisfy the third requirement of privity, Defendant again relies on federal law, but in its reply Defendant states privity also exists under California law. To establish privity under California law, Defendant must show that it "shared 'an identity or community of interest, with adequate representation of that interest in the first suit, and circumstances such that the nonparty should reasonably have expected to be bound by the first suit.'" *Grande v. Eisenhower Med. Ctr.*, 13 Cal. 5th 313, 326 (2022) (quoting *DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 826 (2015) (internal quotation marks omitted).

Starting with the third element, Defendant argues it is met here because Plaintiff alleged in the arbitration proceedings that Defendant would be bound by the results of that proceeding. (Reply at 3-4.) However, nowhere in the statement of claim did Plaintiff so allege. As stated above, Plaintiff certainly mentioned Defendant in the arbitration proceedings, but the mere mention of Defendant does not amount to an allegation that Defendant would be bound by the results of those proceedings. Even if Plaintiff did so allege, that allegation would not constitute an admission or evidence that Defendant either reasonably expected or otherwise agreed to be bound by the arbitrator's decision.

On the contrary, given that the arbitration proceedings were based on contracts between Plaintiff and Rice and Young only, the more plausible conclusion is Defendant would *not* have reasonably expected to be bound by the arbitration proceedings. Rice and Young having prevailed in those proceedings makes it convenient for Defendant to now suggest that it expected to be bound by the arbitrator's decision. But it strains credulity to think Defendant would be taking that same position had the arbitrator ruled in favor of Plaintiff. On the record currently before the Court, Defendant has not shown the third element of privity is satisfied. For this reason, and in light of Defendant's failure to show that the harm alleged in this case is the same harm at issue in the arbitration, the Court denies Defendant's motion to dismiss this case as res judicata.

/ / /

/ / /

B.     **Failure to State a Claim**

The only other basis for Defendant's motion is Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under this Rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

Here, Plaintiff's claims both allege trade secret misappropriation, one claim arising under the DTSA and the other arising under the CUTSA. "To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020). The elements under CUTSA are similar. *See Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665-66 (2003) (citations omitted) (stating elements of CUTSA claim are: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff.")

In the motion, Defendant argues Plaintiff has failed to allege sufficient facts to support the misappropriation element. Under the DTSA, misappropriation is defined as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who –

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that –

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5).  *See also* Cal. Civ. Code § 3426.1(b) (setting out nearly identical definition of misappropriation).

   Contrary to Defendant's argument, Plaintiff has alleged sufficient facts to support this element.  For instance, Plaintiff alleges that in the two months prior to being terminated from the Company, Rice "downloaded and copied" confidential documents containing Plaintiff's trade secrets, including Plaintiff's "Blue Book." (Compl. ¶ 51.)  Plaintiff notes that Rice "had not accessed that Blue Book in the full year prior" to his termination.  (*Id.*)  Plaintiff further alleges that after his termination, Rice "installed and used an external USB 'thumb' drive … to access and copy Company files[,]" (*id.* ¶ 53), including files "labeled

'Confidential' on the face of the documents," and files with "Confidential" in the filename. (*Id.* ¶ 54.) Plaintiff further alleges that prior to returning his Company laptop, Rice "attempted to permanently delete thousands of [Plaintiff's] documents from his Company laptop." (*Id.* ¶ 57.) In addition, after Plaintiff discovered Rice's use of the thumb drive and confronted Rice about it, Rice claimed "he 'disposed' of it and other hard copy files related to his work with the Company that he kept after his termination." (*Id.* ¶ 58.)

Plaintiff then alleges that less than six months after Rice and Young were terminated from the Company, they founded Exokeryx, the Defendant in this case. (*Id.* ¶ 61.) Plaintiff alleges Defendant

> knew that its founders, Rice and Young, had no right to copy, take or use [Plaintiff's] trade secrets. Given Rice and Young are founders and officers of Exokeryx, Defendant cannot deny that it knew of the contractual obligations and the terms of the Employee Handbook and Code of Business Conduct and Ethics Policy—obligations that Rice and Young … agreed to in order to protect [Plaintiff's] trade secrets.

(*Id.* ¶ 76.) Plaintiff further alleges that despite Defendant's alleged knowledge of Rice and Young's misappropriation, Defendant then hired several more of Plaintiff's former employees. (*Id.* ¶ 6.) A year after Rice and Young founded Exokeryx, it "provided data on experiments that it had run, indicated it had already filed patent applications, and announced that it would launch its first product, 'ExoPrep,' in 2023." (*Id.* ¶ 7.) Plaintiff alleges Defendant's website now "contains a three-part product roadmap" that "tracks exactly the three generations of products at Biological Dynamics." (*Id.* ¶ 47.)

Defendant takes these and other allegations from the Complaint, isolates them, and argues that each specific allegation is insufficient to allege misappropriation. However, that approach ignores the broader context in which the alleged facts took place, which the Court must consider in deciding the present motion. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will, …, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") Defendant also draws inferences from the allegations in its favor, which

is inconsistent with the standard applicable to motions to dismiss.  Under the appropriate standard, the Court finds Plaintiff has alleged sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  Accordingly, Defendant's motion to dismiss the claim under Rule 12(b)(6) is denied.

## III.
## CONCLUSION AND ORDER

For the reasons set out above, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated:  April 2, 2024

_____

Hon. Dana M. Sabraw, Chief Judge
United States District Court